Today, a total of six cases. Two of them are being submitted without oral argument on the briefs later today. They are Appeal No. 2007-3182, Ladrido v. Merit System Protection Board, and Appeal No. 2007-5125, Glaudy v. United States. The four cases on the argument list will lead off with Roper v. Department of Veterans Affairs. Before calling that case, the Court wishes to acknowledge the presence with our great thanks of Judge Denise Coate from the United States District Court for the Southern District of New York, who is sitting with us today and tomorrow as a part of our program of having regular visitors from the District Court sit with us. We thank her for her efforts and her generosity to help us out. And with that, we'll hear an argument in Appeal No. 2007-7003, Roper v. Department of Veterans Affairs. Mr. Carpenter, welcome again, and good morning to you. Please proceed. Good morning, Your Honor. To the Court, please. Kevin Carpenter appearing on behalf of Mr. Ben Roper. Mr. Roper reveals a decision of the United States Court of Appeals for Veterans Claims seeking an interpretation of the VA Regulation 38 CFR 3.310A. In that regulation, the VA provides for the additional compensation to veterans who are already receiving service-connected compensation to receive additional compensation when it can be established that a veteran has acquired an additional disability that is proximately due to or the result of a service-connected disability. The question in this case has to do with another VA regulation and its impact, if any, on that regulation, 38 CFR 4.25. Under 38 CFR 4.25, the VA provides for what they refer to as a combined rating procedure. It is Mr. Roper's contention that there is nothing within the language of 3.310 that refers to 4.25 and vice versa. And as a consequence, the language in 4.25 is premised upon whether or not the VA has otherwise provided. It is Mr. Roper's position that 38 CFR 3.10A otherwise provides for an exception to the combined rating process, but more importantly, the plain language of the regulation dictates that an additional disability be rated as part of the original service-connected condition. Well, it doesn't say rated, though. It shall be considered as a part of is the language. Yeah, but 3.10 doesn't contain the word rated, which raises the question about whether it governs ratings or only establishment of service connection of the secondary type. That's correct, Your Honor, except that that is where the misnomer is, is because 3.310 does not require service connection. Service connection has already been established. The underlying condition is the predicate requirement for the additional disability. Well, I thought it was the position of the government that the effect of regulation 3.10 was to provide for the very concept of secondary service connection. It's true that the initial disability was previously established, and the new fact was the related depression that aggravated the impact of the hearing loss in terms of employability, for example, and that, therefore, it has nothing to do with ratings. It only authorizes the concept of secondary service connection. What's your response to that? Well, it has to do, Your Honor, with how one interprets the phrase that the VA used when it said be considered a part of the original condition. We submit that considered as a part of the original condition must mean in terms of how that condition is evaluated for purposes of compensation. Well, but they say yes, but only for purposes of service connection of the second disability has nothing to do with rating. Because they're reading in service connection, as did the lower court. This does not deal with service connection. The secondary condition does not become service connected. It becomes eligible for additional compensation under 1110. 38 U.S.C. 1110 was the statute that the VA was interpreting when it wrote 3.310. It was determining whether there will be compensation paid, and in order for compensation to be paid, the disability must be resulting from a disease or injury which was incurred in service. In this case, the injury incurred in service was to Mr. Roper's hearing, and he has been receiving compensation since discharge from service for his hearing loss at a gradually progressively increasing rate of compensation, which has now increased because of the additional disability from a psychiatric disability, which is approximately due to or the result of. So the connection here is not between the incident in service, but between the subsequent post-service disability of the hearing loss. In other words, the analysis under 3.310 is the relationship between the post-service disabilities and not service connection. Service connection is... Why isn't the relationship at issue when you're doing an analysis under 3.310 the connection between the original disability that occurred during service and therefore was service connected without doubt, and the new condition here, the depression? Well, it is. So it goes to liability, not the amount of an award, and not how you combine the two disabilities to determine a rating that then helps to determine a dollar amount for an actual award of compensation. That is correct. Liability to pay compensation under 3.310. 4.25 does not involve the payment of compensation. No, it's the step before that. The rating precedes calculating the dollar amount due for compensation. But it's still separate. It's the second of the three phases. Liability, service connection, rating, and then the final dollar determination and award. That's right. And the question here is how do you determine that compensation? Do you take the 50 and the 50 and add them together as part of the same or original condition that is being evaluated under 3.310? That depends on whether 3.310 speaks to the rating exercise or merely the determination of liability. The government argues it only deals with determining what I'm calling loosely liability and has nothing to do with the rating issue and that once liability is settled and you're now trying to determine percentage rating, you're under the other regulation 4.27 or whatever the citation is. Except that that reads into 4.25 provisions that are not there. 4.25 expressly relates to diseases. This was not a disease. This was an injury which was incurred. Now exactly why they chose to limit 4.25's reference to diseases, I don't know. I didn't write the regulation. Certainly depression is a disease. And it is a disease that is related to the post-service disability of hearing loss. What is being compensated for is the injury to his hearing which occurred as a result of acoustic trauma. I thought your whole case was that you want 100% rating because you have two serious conditions or disabilities and you want them added. That's correct, Your Honor. It doesn't only deal with the hearing loss. It deals with two separate and distinct impairments, doesn't it? Except that that's not what their regulation says. Their regulation doesn't say that they will be considered two separate and distinct impairments. If it had said that, then I wouldn't have a position. Which regulation are you referring to? 3.310. They say that's inapplicable. The one that applies is 4.25. And if they're right, they win. If you're right that 3.310 applies, you win. That's correct. Because I understand the case at present. And so we're trying to understand which regulation governs the rating exercise when you have two separate conditions or impairments or disabilities. And you have to somehow calculate their combined effect for purposes of establishing the foundation for a dollar award of compensation. And I submit that 4.25 deals with disabilities that have sources independent of one another. The correlation under 3.310 is that it is a dependent relationship. It is a derivative relationship that he cannot get compensation for depression because nothing happened in service that caused his depression. What happened in service was a hearing loss. He developed the depression post-service as a result of the service-connected hearing loss. To the extent your argument with respect to 4.25 depends on the word disease, that's really used only in part of the discussion under subsection B. Doesn't the table as a whole apply to disabling conditions, not necessarily diseases? It certainly does as it is generally applied. The question, however, becomes how you treat a condition as part of an original condition when the right to compensation is established through 3.10. Under 4.25, it is our position that that deals with multiple injuries or diseases which occurred in service which result in multiple or separate post-service disabilities. And that the VA was charged by Congress under 1155 to develop a rating schedule, which they did, to determine what the evaluation should be for those individual conditions. So you're saying all secondary impairments are governed exclusively by 3.10 and 4.25 would have no application except in the case where the multiple impairments all arose during service? That's correct. All right, well, let's hear from the governor. Was there another question for Judge Martin? Okay, then I'll present the balance sheet. Mr. Edmonds, good morning to you. Good morning, Your Honor. Let's not start at the top. Let's start where we are. May it please the Court. Section 4.25 provides specifically for the circumstances that we are faced with here. It states explicitly that except as otherwise provided in the schedule the disabilities arising from a single disease entity, in these examples, are to be rated separately as they are all under disabling conditions, as are all other disabling conditions, if any. What that regulation means is it means that in applying the VA's regulations, you do exactly as the VA did here. And you apply the secondary condition as well as the primary condition. Mr. Carpenter agrees that if 4.25 governs the rating in this case, he loses. His argument is that 4.25 does not apply to this case because as he reads .310, it applies, and it has a whole different slant to it. So it seems to me you have to convince us that he is wrong and that you are right, namely that 4.25 is the sole controller of the rating and that .310 is not relevant. I believe I can do that, Your Honor, for very clear reasons. First of all, 4.25b speaks directly to this issue. It is a specific governing regulation that applies. Well, does it say somewhere in 4.25 secondary conditions? Because you're saying it speaks directly to this issue. I mean, 3.310 actually talks about when secondary considerations and how secondary conditions ought to be treated. It seems to me that if anything speaks more directly to this issue, it would be 3.10. I'm not suggesting that that doesn't mean 4.25 doesn't apply, but your statement was 4.25 speaks directly to this. So I want to make sure I'm not missing something. Well, my statement is that 4.25b speaks directly to conditions caused by a single disease entity, of which secondary conditions and secondarily service-connected conditions would be one example. So 4.25, simply by its plain terms, says that when there are two disabilities resulting from a single cause, which is exactly the case when you have a secondary service-connected disability, then you apply the rating schedule just as you would in the case of any other situation involving multiple disabilities. Well, wait a minute. If it's key to disease entities, is the hearing loss a disease entity? Yes, Your Honor, I believe so. The language is very medical and very technical, but the hearing loss here is the circumstance, the producing cause, the proximate cause in the terms of section 3.310 of the depression, and that is the only way that the depression is connected back and compensable under the VA regime. But that's not disputed here. What's disputed is which of the two regulations applies. You are quoting language from the one you say applies, 4.25, but the language, as you've just recited it, talks about multiple impairments coming from a disease entity. Here we clearly have two impairments, one mental, one hearing-related, but the language that you rely on would require that the hearing loss he experienced on active duty be considered a disease entity. It's not clear to me that a hearing loss is a disease entity like cancer is a disease entity. It may not be that hearing loss is a disease entity in just the same way. Well, isn't that a problem for anybody then under this regulation? I don't believe so, Your Honor, for this reason and for many other reasons. A disease entity, I think, for example, one of the examples given is cerebrovascular accident, which assumes some kind of accident which would be similar to the accident that caused Mr. Roeber's hearing loss. So while there are conditions such as arthritis and multiple sclerosis that may be more akin to the traditional concept that we would use the term disease to address, there is also this cerebrovascular accident provision which is not a traditional disease. So I would say that the language disease entity should be construed in light of the examples given in 4.25b. There's no definition for the term in the regs? I don't believe so, Your Honor. Just examples. No code for definitions, Your Honor. But my argument goes beyond that because Section 4.25 is promulgated pursuant to 38 U.S.C. 1155, which is the statute that authorizes the VA to devise a system of ratings and to apply that system. And in creating its set of regulations that govern this case, the VA relied directly on Section 1155 in promulgating this particular regulation. He's not saying it's unauthorized. He's just saying it's inapplicable to his client. And then to finish the point that I'm trying to make, you look at the other regulation, 3.310, and it is not promulgated under the rating statute. It is promulgated under the statutes that provide for service connection. Those statutes provide for service connection by saying that a – and this is paraphrasing – but by saying that an injury sustained either in the time of active military duty or in the time of war is compensable. They don't say anything about a secondary service connection, which is why the VA promulgated 3.310. And 3.310 is the only regulatory provision that establishes secondary service connection. And the point of that provision is simply to do exactly that. How do we know that other than you say so? Is there some regulatory history that spells out what the goal of promulgating 310 was? We do know – I believe there is regulatory history that – It is not in the brief because I believe this court – Is it not relevant? Well, the court has long held, and it is relevant. It's not in the brief because I believe we presume that it's well established that 3.310 governs secondary service connection and is the provision that provides for secondary service connection. And the court has cited this regulation several times in its cases, as has the Veterans Court. So it's well established that the purpose of this is to create secondary service connection, and this is the only provision that entitles veterans to secondary service connection. How do we know that? Because there isn't another one. You've read them all? I have not read them all myself, but I have relied on statements of agency counsel and others and have done my own research. So, while I have not read all of the regulations that govern this, I am very confident that – Your view is essentially that 310 was promulgated solely to establish a right to compensation. That's correct. And that's the outer limit of what it was intended to do and what it actually does. Well, it was promulgated to connect diseases or conditions that arise from a service-connected, a service-incurred – I guess I should use service-incurred instead of service-connected – injury to the reserve. Counsel, would it be helpful for you to look at the CFR provisions themselves and the citation to the authority underlying each provision? Is the authority for Section 3.310 actually listed as 38 U.S.C. Section 501A? And is the authority for Section 4.25 listed as 38 U.S.C. 1155? Is that in part what you're relying on? Yes, it is in part what I'm relying on, Your Honor. And I see 501A here. I don't see the other provision. But I am aware that this three-point – in my Westlaw printout here – that Section 3.310A was promulgated pursuant to the two statutes, 1110 and 1131, that provide for service connection in general. And its purpose is solely to link a secondary condition that arises out of a condition that is incurred while on active duty. Section 3.310 didn't always have this exact language, right? It underwent some change in time. Do you think that change impacts how we ought to construe it? Namely, should it have been construed differently when it had the original language? And then you're suggesting we ought to construe it now. No, Your Honor. I believe the construction – there have been some amendments to it. I believe it was longer at first, and then it said for all purposes. The for all purposes language is kind of what I'm keying in on. Are you suggesting that the absence of the for all purposes language takes 310 out of the purview of affecting ratings, where it might have affected ratings when it had that previous for all purposes language? I'm wondering if that's one of the government's arguments here. That is not one of our arguments, because I don't believe that that is what the VA meant to do when it took out that language. And I believe if you look at sort of the first version, which speaks to for all purposes, i.e. combat-related awards, then for all purposes, then the statute as it exists now, I think in all of those iterations of the statute, the VA intended to provide the same thing, which is secondary service connection. But clearly none of those regulatory provisions were promulgated under the rating provision. Clearly, as Chief Judge Michel said, there are stages in the process, and this is the stage where you determine whether a disability is compensable, not whether you determine the amount of compensation. In fact, if you were to look at Mr. Roper's argument on its face, it doesn't make sense, because where do you get the 50% that Mr. Roper would rate each of his conditions as if you don't turn to some other provision? Certainly the 50% rating doesn't come from 3.310A. That, I think, is proof that this provision, this regulatory provision, does not and was not intended to speak to ratings. You have to go somewhere else. So am I understanding your argument right? Tell me if I've got it. That 4.25 addresses the combination of ratings, and even if 3.10 were to create an exception that in secondary conditions you wouldn't apply 4.25, it doesn't say what you do apply in the absence thereof, and wouldn't that bring us to a deference situation for agency interpretation? Well, it might bring you to a deference situation where the court might simply hold that there is no way that, as Mr. Roper says, the plain meaning of this sentence in this 3.310 affects ratings. And so you could, I mean, the court could certainly hold that it should give VA deference in interpreting its own regulations. That's certainly a position that would be supported by authority. But I think even before you get to that, you have a provision that doesn't speak to ratings at all. So if you assume that there is an exception under this provision, I think that that would be the mistake to make in the first place, because this provision does not speak to ratings whatsoever. It speaks only to establishing a service connection. And at bottom, the issue in this case is whether Mr. Roper will be treated like every other veteran who suffers from multiple disabilities and will receive a combined rating, or will receive a 100% rating that does not reflect his actual civilian impairment as interpreted by the VA, simply because language exists that speaks not to ratings at all. With that, for the reasons I've stated and for the reasons in our brief, we ask the court to affirm the judgment of the Veterans Court. All right, thank you. Mr. Carpenter, you have a little over four minutes, maximum. Your Honor, it seems that we have to look to the purpose of why the VA wrote 3.31. They wrote it because they recognized that there were circumstances in which a disability could cause additional disabilities. They premised that under 1110. 1110 is the right to be paid compensation. The government has suggested that 1155 and the delegation of authority to the VA to create a rating schedule then permits them to treat all disabilities the same. But they don't treat all disabilities the same. They created an exception under 3.310A that permits the VA to treat or create a separate class of disabilities. If that were right, wouldn't one expect 4.25 to say, except for cases covered by 310, the following provision will govern rating multiple impairments? It certainly wouldn't. And yet it doesn't. There's no cross-reference. It does refer to some exceptions, but they're within 4.25 itself. No, but what we find is, as this court observed in the Gardner case, that these regulations have aged rather nicely because there's been no judicial review. No one has raised the question before as to how these should be treated when there is this tension. And clearly this tension exists, and the government says treat him like everybody else. But 3.310A treats him differently. If it applies. If it applies. So here's my question. If we were to agree with your position, I'm just worried about creating what might be an absurd inconsistency in the application of rating determinations. And in particular, why would it be that if someone, due to a grenade, lost an arm and a foot, their rating determination ought to be covered, you would acknowledge, by 4.25, because neither of those is a secondary condition. So it would be covered by 4.25, and they wouldn't necessarily get 50 plus 50. I'm just pulling numbers out of the air. They would get 80, according to 4.25. Yet if somehow the injury is a secondary condition of the original injury, they get 100%. I guess I'm having trouble understanding how two discrete injuries ought to be rated under the table and get less than two related injuries. Are you following me? Tell me why it would be logically justifiable that the agency wanted there to be this discrepancy when it promulgated its regs. Well, I think we're making attribution to the agency that's unreasonable. I'm not sure there is any consciousness within the agency that wanted to accomplish something in particular. But I'm not inclined to construe a reg contrary to the agency's own interpretation when it would result in what might be absurd inconsistent applications. So explain to me why that's not problematic here. Well, it's not problematic first because this is a creation of the VA's own regulatory process. They created two regulations. If the VA's position were to be accepted, then there isn't any reason that they couldn't grant additional compensation simply because there's another disability. Because they related all the way back to the service-connected condition, the incident that happened in service. And therefore there is no need for 3.310. But there is a need for 3.310 because they filled that gap. 1110 says, and the language that they used does not talk about service connection. It talks about a disease or injury incurred that resulted in a disability. And this disability has now resulted in another disability. And that disability under the plain language of 3.310 says it shall be considered as part of the same condition. What this panel has to do is to resolve what that language means and can we simply read that language out. The VA would say, read the language out. We didn't mean to add that additional phrasing because it then conflicts with 4.25. The fact that it conflicts with 4.25 should not be on the burden of Mr. Roper or anyone else similarly situated who has a disability resulting from a service-connected disability. Thank you very much. Mr. Carpenter and Mr. Edmonds will take the appeal under advisement.